IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| AKHIKPEMEL BRAIMAH, | ) | |
| | ) | |
| Plaintiff, | ) | 4:03cv3135 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| FRANCIS SHELTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the following pending motions: (1) filing no. 121, the Motion for Summary Judgment filed by defendants-Fricke, Stebbins, Selby, Adams, and Gochinar (collectively the "Douglas County defendants"); (2) filing no. 129, the Motion to Dismiss filed by Janssen Williams, M.D. and Mardelle Ludwig ("Wexford[1] defendants"); (3) filing no. 134, the Request for Summons forms filed by the plaintiff, Akhikpemel Braimah; (4) filing no. 139, the plaintiff's Request for Production of Documents; (5) filing no. 144, the plaintiff's Motion Requesting Delay of Summary Judgment Ruling; (6) filing no. 146, the plaintiff's Motion in Opposition to Defendants' Summary Judgment Motion; (7) filing no. 149, the Plaintiff's Motion to Enter All Affidavits, Medical Records Evidence, Admissions, Interrogatories, and All Other Exhibits; (8) filing no. 157, the Douglas County defendants' Motion to Stay Discover Instanter; and (9) filing no. 166, the Douglas County defendants' Motion to Dismiss.

---

[1]The plaintiff originally brought this action against "Wexford Medicine in Corrections," Janssen Williams, M.D., Francis Shelton and Mardelle Ludwig (employees of Wexford), and corrections officers at the Douglas County Correctional Center ("DCCC"). By "Wexford Medicine in Corrections," the plaintiff referred to Wexford Health Sources, Inc., 205 Greentree Commons, 381 Mansfield Avenue, Pittsburgh, PA 15220 ("Wexford"), the private company which provided medical services to inmates at DCCC pursuant to a contract with Douglas County, Nebraska during the period relevant to this litigation.

1

In his Comprehensive and Restated Complaint (filing no. 65), the plaintiff, a state prisoner, asserts federal civil rights claims pursuant to 42 U.S.C. § 1983 and claims arising under state law regarding events at the Douglas County Correctional Center ("DCCC"), while the plaintiff was housed there as a pretrial detainee. The plaintiff accuses the defendants of failure to protect him from injury by another inmate, grossly deficient medical care at DCCC, and other unlawful conditions of confinement, which violated the Eighth and Fourteenth Amendments to the United States Constitution, infringed the plaintiff's civil rights, and left him without any sight in one eye and problems with his right knee.

## Exhaustion of Administrative Remedies

Among other bases for dismissal of the complaint, as amended, the defendants assert in filing nos. 129 and 166 that the plaintiff failed to exhaust administrative remedies before filing his complaint in the above-entitled case. Under 42 U.S.C. § 1997e(a)[2] of the Prison Litigation Reform Act ("PLRA"), a prisoner may not bring an action pursuant to 42 U.S.C. § 1983 challenging prison conditions until after available administrative remedies have been fully exhausted. See Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory"); Booth v. Churner, 532 U.S. 731, 733-34 (2001) (exhaustion is mandatory). See also Lyon v. Del Vande Krol, 305 F.3d 806, 808 (8th Cir. 2002):

---

[2]42 U.S.C. § 1997e(a) states:

(a) Applicability of administrative remedies
No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

> The Prison Litigation Reform Act of 1996 (PLRA) amended 42 U.S.C. § 1997e(a) to require that inmates who have civil rights claims must first exhaust all administrative remedies before bringing an action under § 1983. See Booth v. Churner, 532 U.S. 731, 733-34 ... (2001). This is true even though relief of the sort that the plaintiff is seeking is not available through the administrative procedures that are available. Id. at 737-41....

A defendant's actual knowledge of prison conditions does not absolve a plaintiff of the obligation to exhaust administrative remedies before filing a lawsuit. Exhaustion of grievance procedures promotes the policy of allowing complaints to be addressed by prison administrators before a prisoner initiates a federal lawsuit. Exhaustion may prompt corrective action and thereby remove the need for litigation, may filter out frivolous suits, and may at least create an administrative record, useful in resolving the matter if litigation ensues. Porter v. Nussle, 534 U.S. 516, 524-25 (2002). Thus, a primary purpose of exhaustion is to ensure that the plaintiff's institution has an opportunity to address the plaintiff's claims *before* they reach federal court, even if the institution has actual knowledge of the challenged prison conditions and even if the institution chooses not to rectify the conditions.

A case subject to the PLRA must be dismissed if filed before the plaintiff completed exhaustion of administrative remedies. Jones v. Norris, 310 F.3d 610, 612 (8th Cir. 2002). The PLRA does not permit a stay of the litigation pending exhaustion. Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).

In filing no. 129 and supporting materials, the Wexford defendants include the DCCC *Inmate Rules and Regulations Handbook*. Chapter XI, §§ 11.1, *et seq*. of the *Handbook* informs inmates at DCCC of the institution's grievance procedures and establishes a two-step exhaustion process. After the initial formal grievance contemplated by section 11.2.A

3

of the Handbook ("Step One grievance"), an investigation ensues, and a written response or decision usually follows within ten working days of receipt of the grievance. Id. § 11.1.E. In the absence of a favorable response, the second, and final, step of the process is an appeal to the Chief Deputy of Corrections[3] ("Step Two grievance"), as set forth in section 11.2.C of the *Handbook*. Thereafter, if the inmate disagrees with the Chief Deputy's disposition of the appeal, section 11.2.D of the *Handbook* authorizes the inmate to pursue other remedies outside the facility such as litigation.

The plaintiff complains that guards at DCCC would not give him grievance forms. However, section 11.1.B of the *Handbook* instructs inmates that, to obtain grievance forms, they should submit Inmate Interview Requests ("kites") requesting formal grievance forms. The plaintiff has attached to an earlier amended complaint (filing no. 19) copies of a variety kites, but none of those requests, or even mentions, grievance forms.

The plaintiff also maintains that filing grievances would have been futile. However, a plaintiff's subjective beliefs concerning the futility of submitting grievances will not avoid the exhaustion requirement of 42 U.S.C. § 1997e(a). Lyon v. Vande Krol, 305 F.3d 806, 809 (8th Cir. 2002); Massey v. Helman, 259 F.3d 641, 644 n.6 (7th Cir. 2001) ("Mr. Massey's allegation in his complaint that there were no administrative remedies available to him because 'any administrative remedies that are claimed to exist are in fact a sham' was

---

[3]Taking judicial notice of the court's records in other cases, the court notes that Ann O'Connor served as the Chief Deputy of the Douglas County Department of Corrections, with oversight of DCCC, from March 1999 through April 2003. See, e.g., Case No. 8:02cv533, Allen v. Douglas County Jail, et al., Exhibit 2 to filing no. 21, the Affidavit of Ann O'Connor dated July 21, 2003. See also Case No. 4:02cv3255, Scott v. Douglas County, et al., Exhibit 2 to filing no. 25, the Affidavit of Ann O'Connor dated October 27, 2003. Subsequently, Robert Houston became the Director of DCCC. Presently, John Hubbard serves as Interim Director.

insufficient to avoid the exhaustion requirement of § 1997e(a)."). (Citation omitted.) Accord Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000), cert. denied, 531 U.S. 1156 (2001). "Section 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. [The plaintiff] failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" Id. at 688 (citation omitted). Completion of the grievance process is necessary even after a plaintiff has suffered harm and even if the grievance is too late to prevent harm. Thomas v. Woolum, 337 F.3d 720, 733-35 (6th Cir. 2003).

The plaintiff contends, in addition, that he did submit grievances[4], but that guards at DCCC confiscated his property and lost or destroyed the plaintiff's copies of his grievances. The plaintiff has filed evidence in support of his position that he filed at least one "Step One" grievance (see filing no. 150). Thus, a factual issue persists concerning whether the plaintiff did or did not submit any "Step One" grievances concerning the claims alleged in the Comprehensive and Restated Complaint.

However, no factual issue exists concerning the second step of the grievance process. The plaintiff does not even allege that he filed any "Step Two" grievance, i.e., an appeal to the Chief Deputy (or later to the Director of DCCC) from any grievance, whether "lost" or not. After the initial ten-day investigatory period following submission of a "Step

---

[4]The record contains evidence that the plaintiff submitted many kites on the subject of medical care, but it is not clear whether the plaintiff submitted grievances as well. Only formal grievances at DCCC satisfy the exhaustion requirement of 42 U.S.C. § 1997e(a).

5

One" grievance (see § 11.1.E of the *Handbook*), it should have been readily apparent to the plaintiff that he would not be receiving the requested relief. The importance of an appeal to the Chief Deputy (or Director) is particularly clear when, as in this case, the plaintiff harbored suspicions regarding proper treatment of his "Step One" grievances.

The language of section 11.2.C of the *Handbook* is permissive, i.e., an inmate "may" file an appeal to the Chief Deputy. Nevertheless, the appeal to the Chief Deputy was, and is, "available" as an integral component of the exhaustion process. Under the PLRA, a prisoner must *complete* the available exhaustion process. In Booth v. Churner, 532 U.S. 731 (2001), for example, the plaintiff filed an initial grievance but failed to institute an administrative appeal:

> Before resorting to federal court, Booth filed an administrative grievance charging at least some of the acts of abuse he later alleged in his action .... He did not, however, go beyond the first step, and never sought intermediate or final administrative review after the prison authority denied relief. Booth's failure to avail himself of the later stages of the administrative process led the District Court to dismiss the complaint without prejudice for failure to exhaust "administrative remedies ... available" within the meaning of 42 U.S.C. § 1997e(a) (1994 ed., Supp. V) .... The Court of Appeals for the Third Circuit affirmed, 206 F.3d 289 (2000)....

Id. at 734-35. The Supreme Court affirmed the dismissal, rejecting the plaintiff's argument that complete exhaustion is excused when the monetary relief sought by a prisoner is not available through administrative exhaustion.

Dismissal is required when an inmate has not exhausted administrative remedies as to all claims before filing a lawsuit. Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003). "Thus, in considering motions to dismiss for failure to exhaust under section 1997e(a), the district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred. If exhaustion was not completed at the

time of filing, dismissal is mandatory." Id. If multiple claims are asserted in court, and any claim was not fully exhausted before the plaintiff filed a lawsuit, all claims must be dismissed. Graves v. Norris, 218 F.3d 884, 885-86 (8th Cir. 2000) (*per curiam*). Accord Kozohorsky v. Harmon, 332 F.3d 1141, 1143 (8th Cir. 2003) (but allowing the plaintiff to amend his complaint to drop all unexhausted claims).

A dismissal pursuant to 42 U.S.C. § 1997e(a) is without prejudice. Castano v. Nebraska Dept. of Corrections, 201 F.3d 1023, 1025 (8th Cir.), cert. denied, 531 U.S. 913 (2000). See also Walker v. Maschner, 270 F.3d 573, 577 (8th Cir. 2001): "[The plaintiff] concedes that he failed to exhaust his available administrative remedies before filing his § 1983 action. Therefore, [the plaintiff's] present claim is barred by 42 U.S.C. § 1997e(a). However, [the plaintiff] may file a claim in federal court once he has fully exhausted his prison remedies." After dismissal of this litigation, if the plaintiff wishes to continue to pursue his claims, he may proceed to exhaust whatever administrative remedies the Interim Director of DCCC may make available to him by mail. Even if a grievance is denied as untimely, exhaustion requires that the plaintiff appeal the decision. Thereafter, in a new lawsuit in state or federal court, the plaintiff must attach to his complaint evidence of the efforts he made to exhaust all available administrative remedies.

**Supplemental Jurisdiction**

The plaintiff alleges claims, such as negligence, founded on Nebraska law. A federal district court has discretion under 28 U.S.C. § 1367(c)(3) to decline to exercise supplemental jurisdiction over claims arising under state law after dismissal of the claim(s) over which the court has original jurisdiction. In addition, 28 U.S.C. § 1367(d) tolls the limitations period for state-law claims during the pendency of a federal lawsuit, if the statute

of limitations had not expired on such claims before the plaintiff filed a complaint in federal court. 28 U.S.C. § 1367(d) states in pertinent part: "The period of limitations for any claim asserted under subsection (a) ... shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." The tolling provision of section 1367(d) provides "assurance that state-law claims asserted under § 1367(a) will not become time barred while pending in federal court." Jinks v. Richland County, 538 U.S. 456, 464 (2003). Consequently, the dismissal of the plaintiff's claims will be without prejudice.

THEREFORE IT IS ORDERED:

1. That filing nos. 129 and 166, the defendants' Motions to Dismiss based on 42 U.S.C. § 1997e(a), are granted;

2. That all other pending motions (filing nos. 121, 134, 139, 144, 146, 149 and 157) are denied as moot;

3. That the plaintiff's complaint, as amended, and this action are dismissed without prejudice; and

4. That a separate judgment will be entered in the above-entitled action and in the consolidated Case No. 4:04cv3276.

DATED this 20th day of May, 2005.

BY THE COURT:

s/ Richard G. Kopf
United States District Judge